*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN JABER,

        Plaintiff-Appellant,

v

P & P HOSPITALITY, LLC, d/b/a THE RAVENS CLUB,

        Defendant/Cross-Plaintiff-Appellee,

and

JACOB E. RANDALL,

        Defendant/Cross-Defendant-Appellee.

FOR PUBLICATION
June 27, 2024
9:00 a.m.

No. 363572
Washtenaw Circuit Court
LC No. 20-000172-NO

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order dismissing the action against defendant Jacob E. Randall (Randall). In this dramshop action, MCL 436.1801, plaintiff challenges the trial court's underlying order granting summary disposition in favor of defendant P & P Hospitality, LLC, d/b/a The Ravens Club (P & P).[1] We would reverse in part and remand for further proceedings consistent with this opinion.[2] But, in *Sandoval v Farmers Ins Exch*, ___ Mich App

---

[1] Although a crossclaim was filed by defendant P & P Hospitality, LLC, d/b/a The Ravens Club, the crossclaim is not at issue in this appeal. Furthermore, although Randall was identified as an appellee, he is not a participant in this appeal. For ease of reference, the singular "plaintiff" refers to Susan Jaber, and defendant will be addressed as P & P.

[2] The trial court's order granting P & P's motion for summary disposition applied to the negligence claims as well as the dramshop claim. On appeal, plaintiff does not challenge the dismissal of the dramshop claim and the reversal would apply only to the negligent training and supervision claims.

___, ___; ___ NW3d ___ (2024) (Docket Nos. 361166; 361176), slip op at 6, a majority of this Court determined that a consent or stipulated final order does not allow for an appeal from an earlier order unless a party reserved the right to appeal the underlying order in the stipulation to the order of dismissal. And, if it failed to reserve the right to do so in the stipulation to the order, this Court lacks jurisdiction to hear the appeal. *Id.* Because we are bound to follow *Sandoval*, we dismiss plaintiff's appeal for lack of jurisdiction.

In our view *Sandoval* was wrongly decided because it correlated this Court's jurisdiction to the inclusion of specific language in a lower court order rather than on the court rules governing jurisdiction and it ignored the application of contract principles. MCR 7.215(J)(2). We therefore dismiss plaintiff's appeal for lack of jurisdiction only because we are bound to follow *Sandoval*, and MCR 7.215(J)(1) requires that we do so. Otherwise, we would address the merits of plaintiff's appeal and partially reverse the trial court's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

In February 2020, plaintiff, a resident of Portland, Oregon, filed a complaint naming as defendants, The Ravens Club, a licensed seller of alcohol located in Ann Arbor, Michigan, and Randall, a resident of New Hampshire and an individual allegedly overserved alcohol at The Ravens Club. Specifically, plaintiff alleged that, on November 24, 2017, she was standing on the sidewalk outside The Ravens Club with her back to its entrance. She allegedly suffered severe injuries when she was hit from behind by Nicholas Dean (Dean), an agent, servant, and employee of P & P. Plaintiff alleged that Dean and Randall violently struck her from behind and caused her face to hit a light pole and then the sidewalk. Plaintiff raised three claims against P & P: (1) negligence arising from the service of "great quantities of intoxicating beverages" to Randall and the failure to properly hire, train, and supervise its staff; (2) "negligent hiring, training and supervision;" and (3) "Dram Shop Liability" for continuing to furnish alcoholic beverages to Randall, a visibly intoxicated person.[3]

In February 2022, P & P moved for summary disposition under MCR 2.116(C)(8) and (10).[4] P & P asserted that plaintiff's general negligence claim was foreclosed by the exclusive remedy provision of the dramshop act. Also, plaintiff allegedly failed to present any evidence that P & P's employees illegally served alcohol to Randall or that it was negligent in the hiring, training, retention, and supervision of its employees. Further, plaintiff purportedly failed to show that P & P's manager Dean committed an assault and battery upon plaintiff and that P & P had notice that

---

[3] Plaintiff only named the defendant as "The Raven's Club" in her complaint. Apparently, in its answer, P & P advised that it operated "The Ravens Club." During a settlement conference, P & P's counsel reminded the trial court that the dramshop action was previously filed under lower court case number 19-000258-NO, but it was dismissed before a dispositive motion was heard. We do not have the benefit of P & P's answer and other documentation because it was seemingly filed in the 19-000258-NO file.

[4] The title of this motion reflected that it was made under MCR 2.116(C)(10). During the discussion of the issues, P & P also claimed that summary disposition was appropriate under MCR 2.116(C)(8).

-2-

Randall would injure plaintiff. P & P claimed that it did not have an obligation to protect plaintiff from a third-party's criminal acts, that plaintiff failed to demonstrate the standard of care for hiring and supervising employees, and that plaintiff failed to sufficiently plead respondeat superior where Dean's acts were outside the scope of his employment.

In March 2022, plaintiff responded and agreed that her dramshop act claim should be dismissed. But plaintiff opposed the dismissal of the negligence claims, stating that the dramshop act only addressed an exclusive remedy for claims arising from the service of alcohol. The negligence claims at issue arose from the negligent actions by Dean, including P & P's negligent hiring, training, retention, and supervision of him. Plaintiff claimed that she established a standard of care and breach by Dean's decision to pursue and subdue Randall as he left The Ravens Club. She also denied P & P's claim that respondeat superior was not adequately pleaded.

Specifically, plaintiff submitted that the dismissal of the negligence claims was improper because she was an innocent bystander standing outside The Ravens Club when she was violently struck from behind. Dean, as the general manager, pursued Randall out of the establishment and subdued Randall in a manner that caused violent contact with plaintiff. Because Dean's actions occurred in the scope of his employment, it allegedly gave rise to respondeat superior liability to P & P. Although plaintiff did not see the incident, Randall's mother, Roxanne testified that Dean came out with Randall in a chokehold and Randall's feet raised off the ground. Roxanne opined that Randall was so terrified that he bit Dean's arm. At that point, Roxanne testified that Dean picked up Randall and threw him into plaintiff. According to plaintiff, these facts created genuine issues of material fact and precluded summary disposition in P & P's favor. These facts also demonstrated that the exclusive remedy provision of the dramshop act did not apply to preclude negligence claims arising from the employee's conduct.

In reply, P & P continued to allege that plaintiff did not sufficiently plead respondeat superior, that Dean was not acting in the scope of his employment when he physically took Randall outside the premises, and that plaintiff failed to demonstrate a breach of the standard of care for training and supervising P & P's employees.

In March 2022, the trial court heard oral argument on the dispositive motion. The trial court dismissed the dramshop claim in light of the parties' agreement. The trial court also determined that the exclusive remedy provision precluded an independent cause of action for negligence, stating:

> [I]t's [an] exclusive remedy. I don't think that the, the case[]law, when I'm looking at it, does not create an independent cause of action[] for negligence in the argument of pursuing out into the parking lot, all of that. I just don't think it's there counsel. And I, maybe I'm wrong, maybe the Court of Appeals will disagree with me[.]

The trial court's ruling was reduced to a written order that stated, in pertinent part:

> **IT IS HEREBY ORDERED AND ADJUDGED** that Defendant P & P Hospitality, LLC, d/b/a The Ravens Club, incorrectly identified as The Raven's Club's Motion for Summary Disposition is granted for the reasons stated on the

record and that Plaintiff's complaint against P & P Hospitality, LLC, d/b/a The Ravens Club incorrectly identified as The Raven's Club, only, be dismissed with prejudice and without costs to any party.

> This is not a final order and does not close the case.

After this order was entered, plaintiff moved for reconsideration, asserting that the trial court erred in granting summary disposition premised on the exclusive remedy provision of MCL 436.1801(9) because that statute did not apply to common-law negligence claims. Plaintiff's motion for reconsideration was not filed within 21-days of entry of the order addressing summary disposition, MCR 2.119(F)(1). Four days after filing the motion for reconsideration, plaintiff moved for leave to file a late motion for reconsideration, attributing the untimeliness to clerical error because the e-filing on April 27, 2022 was unsuccessful.

A hearing was held on plaintiff's motion for leave to file a late motion for reconsideration. After hearing the parties arguments, the trial court stated as follows:

> First of all I don't think that I made an error in fact or law, so even if you had timely filed your motion for reconsideration I would deny it. If, for appellate purposes, the Court of Appeals deems that you did properly file the motion for reconsideration I will deny it on the record here and that way you can seek appellate review of my decision to dismiss the Raven Club.

Plaintiff's counsel sought clarification that the trial court's ruling granted permission to file the reconsideration motion, but denied the merits of the motion. The trial court responded, "No. I'm saying that I don't think I made an error in fact or law, so that even if you did file it I would deny it, and you can have that on the record." Plaintiff's counsel then expressed his understanding that the motion for leave to file a late motion for reconsideration was denied. The trial court responded, "I can't say it any clearer, counsellor. Why don't you just attach a transcript when you go up to the Court of Appeals and I think they'll understand what I said." On July 1, 2022,[5] the trial court entered an order that did not address the motion for leave to file a late motion for reconsideration. The trial court's order addressed the merits of the reconsideration motion and determined that plaintiff "failed to demonstrate a palpable error" by which the court and the parties were misled and that a different disposition would not result.[6]

---

[5] The order was dated June 27, 2022, but apparently signed on July 1, 2022.

[6] The court speaks through its written orders and judgments. *City of Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 682; 873 NW2d 342 (2015). In light of the nature of the written order, we presume the trial court granted plaintiff's motion to file the late motion for reconsideration in order to resolve the merits of the reconsideration motion.

-4-

On October 7, 2022, a stipulated order of dismissal was entered. This order, signed by counsels for plaintiff and Randall, stated:

> That upon the stipulation and agreement of Counsel for the undersigned parties, relative to the dismissal of this matter, and the Court being otherwise fully informed in the premises;
>
> **IT IS HEREBY ORDERED** that the claims of Plaintiff, Susan Jaber (Plaintiff), against Defendant Jacob Randall (Defendant) are dismissed, with prejudice, in their entirety, and without costs or attorney fees assessed against any party.
>
> **This order resolves the last pending claim and closes this case.**

Plaintiff filed a claim of appeal from this order, but challenging the underlying order granting summary disposition in favor of P & P. P & P did not file an appellee brief and was not entitled to appear for oral argument, MCR 7.212(A)(4). Nonetheless, at the oral argument on the claim of appeal, plaintiff's counsel noted that a jurisdictional challenge had not been raised by P & P, but felt compelled to apprise this Court of *Sandoval*'s majority decision. Plaintiff asserted that the *Sandoval* case was distinguishable because it involved "unique facts," the *Sandoval* dissent should be followed, and precedent decided before *Sandoval* should govern. Accordingly, for the first time at appellate oral argument, the issue of jurisdiction was raised.

## II. STANDARD OF REVIEW

"[A] challenge to subject-matter jurisdiction may be raised at any time, even if raised for the first time on appeal." *Bank v Mich Educ Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016) (quotation marks and citation omitted). "Whether this Court has jurisdiction to hear an appeal is an issue that we review de novo." *Wardell v Hincka*, 297 Mich App 127, 131; 822 NW2d 278 (2012) (citation omitted). The construction and interpretation of statutes and the court rules also presents issues reviewed de novo. *Associated Builders & Contractors of Mich v Dep't of Technology, Management, & Budget*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363601), slip op at 2. The principles of statutory interpretation apply to the interpretation of the court rules. *Tyler v Findling*, 508 Mich 364, 369; 972 NW2d 833 (2021). "[O]ur primary goal is to determine and effectuate the intent behind the rule." *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653, 661; 633 NW2d 1 (2001). When the language of the court rule is unambiguous, the appellate court will enforce the plain meaning of the rule. *Tyler*, 508 Mich at 370. Each word and phrase in the court rule must be given its common and ordinary meaning. *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018).

A trial court's decision on a motion for summary disposition is reviewed de novo. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 448; 980 NW2d 119 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 449. The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not

rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id.* (quotation marks and citation omitted).

A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *In re Lett Estate*, 314 Mich App 587, 595; 887 NW2d 806 (2016). Under MCR 2.116(C)(8), summary disposition is appropriate when the opposing party failed to state a claim on which relief can be granted. *In re Lett Estate*, 314 Mich App at 595. Under MCR 2.116(C)(8), the legal sufficiency of the claim is examined by the pleadings alone with the factual allegations accepted as true and viewed in a light most favorable to the nonmoving party. *In re Lett Estate*, 314 Mich App at 595. "The motion may be granted only when a claim is so clearly unenforceable no factual development could justify recovery." *Id.* (citation omitted).

### III. JURISDICTION

This Court's jurisdiction is determined by statute[7] and the court rules. *Natural Resource Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 84; 832 NW2d 288 (2013). "The jurisdiction of the court of appeals shall be provided by law and the practice and procedure therein shall be prescribed by the rules of the supreme court." Const 1963, art 6, § 10. MCR 7.203 addresses the jurisdiction of the Court of Appeals for an appeal of right and provides:

---

[7] MCL 600.308: (1) The court of appeals has jurisdiction on appeals from all final judgments and final orders from the circuit court, court of claims, and probate court, as those terms are defined by law and supreme court rule, except final judgments and final orders described in subsections (2) and (3). A final judgment or final order described in this subsection is appealable as a matter of right.

(2) The court of appeals has jurisdiction on appeal from the following orders and judgments that are reviewable only on application for leave to appeal granted by the court of appeals:

(a) A final judgment or final order of the circuit court under any of the following circumstances:

(*i*) In an appeal from a final judgment or final order of the district court appealed to the circuit court under [MCL 600.8342].

(*ii*) In an appeal from a final judgment or final order of a municipal court.

(b) A final judgment or final order from the circuit court based on a defendant's plea of guilty or nolo contendere.

(c) Any other judgment or interlocutory order from the circuit court, court of claims, business court, or probate court as determined by supreme court rule.

(3) An order concerning the assignment of a case to the business court under [MCL 600.8001 *et seq*.] is not appealable to the court of appeals.

(4) The court of appeals has exclusive original jurisdiction over any action challenging the validity of [MCL 600.6404, MCL 600.6410, MCL 600.6413, or MCL 600.6419].

-6-

**(A) Appeal of Right.** The court has jurisdiction of an appeal of right filed by an aggrieved party from the following:

(1) A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), except a judgment or order of the circuit court

(a) on appeal from any other court or tribunal;

(b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere;

An appeal from an order described in MCR 7.202(6)(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right.

(2) A judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule.

Under MCR 7.202(6), a " 'final judgment' or 'final order' means:

(a) In a civil case,

(i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order;

(ii) an order designated as final under MCR 2.604(B);

(iii) in a domestic relations action, a postjudgment order that, as to a minor, grants or denies a motion to change legal custody, physical custody, or domicile;

(iv) a postjudgment order awarding or denying attorney fees and costs under court rule or other law;

(v) an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity; or

(vi) in a foreclosure action involving a claim for remaining proceeds under MCL 211.78t, a postjudgment order deciding the claim."

"To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006) (quotation marks and citation omitted). Disappointment over a certain result is not the hallmark of an aggrieved party. *Id*. "Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power." *Id*. at 291-292. But, on appeal, a litigant must demonstrate that the injury arises from the trial court's actions rather than

an injury arising from the underlying facts of the case. *Id*. at 292. And, once a party claims an appeal of right from a final order, it may raise issues on appeal addressing prior orders. *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009).

In the present case, plaintiff was an aggrieved party from the underlying order granting summary disposition in P & P's favor. That is, plaintiff alleged an interest of a pecuniary nature in the outcome of the case and suffered a concrete and particularized injury from the trial court's ruling that P & P was entitled to be dismissed from the litigation, an injury not arising from the facts of the case. *Federated Ins Co*, 475 Mich at 291-292. But, the litigation was not closed at that time and a final order was not entered because plaintiff's complaint also raised claims against Randall. After Randall was dismissed, plaintiff became entitled to pursue an appeal of right because this dismissal order was "the first judgment or order that dispose[d] of all the claims and adjudicate[d] the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order[.]" MCR 7.202(6)(a)(i). Applying the plain language of the court rule, *Tyler*, 508 Mich at 370, plaintiff was an aggrieved party in light of the trial court's earlier adverse summary disposition decision, *Federated Ins Co*, 475 Mich at 291-292, and plaintiff appealed from the final order that dismissed the remaining parties and closed the case. *Green*, 282 Mich App at 301 n 6. Therefore, we would conclude that this Court properly had jurisdiction over the appeal, MCR 7.203(A)(1), because plaintiff was an aggrieved party and was entitled to appeal the trial court's adverse summary disposition ruling related to P & P. As set forth more fully below, we would conclude that plaintiff was not required to reserve the right to appeal an earlier order granting P & P's dispositive motion in the final order of dismissal because P & P was no longer a participant in the litigation and not a party to the final order closing the case. But, the *Sandoval* majority determined that a final order must contain language reserving the right to appeal the earlier order granting summary disposition, and the failure to do so requires this Court dismiss the appeal for lack of jurisdiction.

## IV. THE *SANDOVAL* DECISION

In *Sandoval*, the plaintiff, Ana Sandoval (Sandoval), was a passenger travelling on a shuttle bus owned and operated by Henry Ford Health System (HFHS) that was driven by Vladimir Boshevski (Boshevski). When Boshevski made a turn, Sandoval's wheelchair came loose and she fell to the floor, suffering injuries. After the accident, Sandoval made a claim for personal insurance protection (PIP) benefits with the Michigan Assigned Claims Plan (MACP), which assigned Farmers Insurance Exchange (Farmers) as the servicing insurer. Sandoval filed suit against Farmers, contending that it unlawfully refused to pay her PIP benefits under Michigan's no-fault act, MCL 500.3101 *et seq*. Farmers answered the complaint and denied responsibility for the payment of PIP benefits. Among the defenses raised, Farmers claimed that the no-fault PIP benefit carriers for HFHS and Boshevski were insurance carriers in a higher order of priority. Sandoval moved for leave to amend her complaint involving Farmers to raise additional claims against HFHS, Boshevski, and Zurich American Insurance Company (Zurich), the insurer of the HFHS shuttle bus, and the trial court granted the amendment motion. *Sandoval*, ___ Mich App at ___; slip op 2-3.

Three different entities (the plaintiffs) provided medical services to Sandoval and received an assignment and transfer of her rights to them. The plaintiffs also filed suit against Farmers, asserting breach of its statutory duties under the no-fault act as well as breach of contract. Farmers

moved to join the plaintiffs and Sandoval actions, and the trial court opted to consolidate the cases. Additionally, Farmers moved for summary disposition, contending that Sandoval could not seek PIP benefits through the MACP as a provider of last resort because the Zurich insurance policy applied to Sandoval's claim. Sandoval concurred with Farmer's motion. Zurich, HFHS, and Boshevski opposed the dispositive motion, contending that Zurich was not the highest priority insurer because it did not qualify as a transporter of passengers under MCL 500.3114(2); and therefore, Farmers was the highest priority insurer and responsible for the payment of PIP benefits to Sandoval. *Sandoval*, ___ Mich App at ___; slip op 2-3.

The trial court granted Farmer's motion for summary disposition and dismissed Sandoval's and the plaintiffs' claims against Farmers without prejudice. The court entered an order stating that the last pending claim was not resolved and the case was not closed. Zurich moved for summary disposition against the plaintiffs, but the motion was denied. Subsequently, the trial court entered two stipulated orders. One order dismissed Sandoval's and the plaintiffs' claims raised against HFHS, Boshevski, and Zurich with prejudice and without costs to any party. The second order dismissed HFHS and Zurich, specifying that it resolved the last pending claim and closed the consolidated cases. This final order was signed by Sandoval's counsel, Zurich's counsel, HFHS's counsel, and counsel for one of the medical providers. Farmer's name was listed in the caption of the final order, but there was a line drawn through it. This order, however, did not state that Zurich was reserving a right to appeal the order. And, before stipulating to resolve the last pending claim in the consolidated cases, none of the defendants, including Zurich, sought interlocutory review of the trial court's order granting summary disposition to Farmers. *Sandoval*, ___ Mich App at ___; slip op 3-4.

After Zurich filed its claim of appeal from the final order closing the case, this Court dismissed the case for lack of jurisdiction, stating "a consent judgment . . . does not include any provision allowing for an appeal as to certain issues." Zurich moved for reconsideration, asserting that it did not stipulate to the trial court's order granting summary disposition in favor of Farmers, and therefore, it was an aggrieved party. This Court granted the motion for reconsideration and reinstated the appeals. *Sandoval*, ___ Mich App at ___; slip op 4-5. In the brief on appeal, Farmers once again contested this Court's jurisdiction in light of the language of the final order.

The *Sandoval* majority declined to reach the merits of the appeal, concluding that the failure to include a reservation of the right to appeal precluded this Court from having jurisdiction:

> Under MCR 7.203(A)(1), this court has "jurisdiction of an appeal of right filed by an aggrieved party from" "[a] final judgment or final order . . . as defined in MCR 7.202(6) . . . ." A final judgment or order is defined as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." MCR 7.202(6)(a)(i). In July 2019, the trial court entered an order granting Farmers's motion for summary disposition and dismissed all claims against Farmers. But, because the order did not resolve the last pending claim, it was not a final order and Zurich could not appeal it as of right. In April 2022, the trial court entered two stipulated orders, one dismissing Sandoval's claims against Boshevski with prejudice and the other dismissing Sandoval's and plaintiffs' claims against HFHS and Zurich with prejudice. The second order indicates it resolves

the last pending claim and closes the consolidated cases, thus, the April 2022 order is final under MCR 7.203(A)(1).

Farmers argues that because the April 2022 stipulated order does not indicate Zurich reserved a right to appeal the order, Zurich is precluded from appealing it altogether. We agree. Generally, "a party cannot stipulate a matter and then argue on appeal that the resulting action was error." *Begin v Michigan Bell Telephone Co*, 284 Mich App 581, 585; 773 NW2d 271 (2009), overruled in part on other grounds by *Admire v Auto-Owners Ins Co*, 494 Mich 10, 34; 831 NW2d 849 (2013) (quotation marks and citation omitted). But an appeal of right to this Court "is available from a consent judgment in which a party has reserved the right to appeal a trial court ruling." *Travelers Ins v Nouri*, 456 Mich 937; 575 NW2d 561 (1998); see also *Begin*, 284 Mich App at 585. See also *Kocenda v Archdiocese of Detroit*, 204 Mich App 659, 666; 516 NW2d 132 (1994) ("We decline to address the issues raised by defendants on cross appeal, because defendants did not condition their stipulation and consent to the court's final orders upon the right to appeal the court's earlier refusal to grant their motion for summary disposition.")

*Travelers Ins* was an action on application by our Supreme Court. In the Court's order remanding to the Court of Appeals and allowing a claim of appeal, the Court cited three cases. *Vanderveen's Importing Co v Keramische Industrie M deWit*, 199 Mich App 359; 500 NW2d 779 (1993); *Smith v City of Westland*, 158 Mich App 132; 404 NW2d 214 (1986); and *Field Enterprises v Dep't of Treasury*, 184 Mich App 151; 457 NW2d 113 (1990). *Vanderveen* involved an appeal of a consent judgment that specifically preserved the right to appeal the issue appellants sought review of. *Smith* was a case alleging 13 different claims. In the litigation, the trial court granted summary disposition on one of the 13 claims, alleging a violation of 42 USC 1983. Shortly before trial all remaining counts were settled and the consent judgment specifically preserved plaintiff's right to appeal the 1983 claim. In *Field Enterprises*, the parties had initially resolved a Court of Claims dispute by entry of a consent judgment. When appeal was sought of this judgment, this Court rejected the claim because the appellant was not an aggrieved party under the terms of the consent judgment. Thereafter, the parties filed an amended consent judgment which preserved the right to appeal. The appellants appeal of right was then accepted by this Court.

In the case before us, the April 2022 stipulated order did not reserve in any manner Zurich's right to appeal or to challenge the July 2021 order granting summary disposition in favor of Farmers. It is certainly true that a party, although appealing from the final order in a case, "is free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992). But it is not a question whether an appellant is aggrieved by an earlier order; it must still be able to claim an appeal from the final order in order to challenge the earlier order. And it cannot do so if it consented or stipulated to the final order, unless it has reserved the right to do so in its stipulation to the order. *Travelers Ins, supra*. And Zurich failed to do so in this case. Accordingly,

-10-

this Court lacks jurisdiction to hear this appeal. [*Sandoval*, ___ Mich App at ___; slip op 5-6.]

In a footnote, the *Sandoval* majority noted that the opinion "should not be taken as a conclusion that there could never be a situation where a case is settled by a consent judgment that does not specifically retain a right to appeal in a prior nonfinal ruling." *Sandoval*, ___ Mich App at ___; slip op 6-7 n i [sic]. Yet, the *Sandoval* majority did not identify the circumstances under which the retention of a right to appeal would arise.

The *Sandoval* dissent rejected the rule that a party to a consent judgment may only appeal by right "if the party reserved that right in the judgment." Instead, the dissent offered the following approach:

> [T]o decide whether a party can appeal a consent judgment or stipulated order by right, courts should consider what the party agreed to in the judgment or order and the injury that the party complains of on appeal. If the party's complained-of injury on appeal is due to the consent judgment, and the party agreed to the consent judgment without reserving an appeal as of right, then that party cannot claim an appeal as of right because it would not be an "aggrieved party" under MCR 7.203(A); its complained of-injury would be the result of its own actions and not the actions of the trial court. But if the same party's complained-of injury on appeal has nothing to do with the consent judgment, and if, by agreeing to the consent judgment, the party did not assent to the trial court's actions that the party contests on appeal, then I would hold that the party could be an "aggrieved party" under MCR 7.203(A). [*Sandoval*, ___ Mich App ___; dissent slip op at 7.]

## V. JUDGMENTS, DISMISSALS, STIPULATIONS, AND CONTRACT LAW

"A consent judgment is by definition a product of voluntary agreement." *Klawiter v Reurink*, 196 Mich App 263, 266; 492 NW2d 801 (1992). "Rather a consent judgment is a settlement or a contract that becomes a court judgment when the judge sanctions it." *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 354; 852 NW2d 22 (2014) (quotation marks, footnote, and citation omitted).

> A consent judgment is different in nature from a judgment rendered on the merits because it is primarily the act of the parties rather than the considered judgment of the court. *No pleadings are required to support an agreed or negotiated judgment. Consequently, a judgment by consent is distinct from a judgment rendered by the court after trial.* [46 Am Jur 2d, Judgments, § 184, p 528 (2006) (emphasis added).]

Consent decrees differ from typical judgments because the "voluntary nature of a consent decree is its most fundamental characteristic." *Local No 93, Int'l Ass'n of Firefighters, AFL-CIO, CLC v City of Cleveland*, 478 US 501, 521-522; 106 S Ct 3063; 92 L Ed 2d 405 (1986) (recognizing that the agreement of the parties "serves as the source of the court's authority to enter any judgment at all"). See also

-11-

*Goldberg v Trustees of Elmwood Cemetery*, 281 Mich 647, 649; 275 NW 663 (1937) ("A judgment by consent cannot ordinarily be set aside or vacated by the court without consent of the parties thereto for the reason it is not the judgment of the court but the judgment of the parties."); *Walker v Walker*, 155 Mich App 405, 406; 399 NW2d 541 (1986) ("When a party approves an order or consents to a judgment by stipulation, the resultant judgment or order is binding upon the parties and the court. Absent fraud, mistake or unconscionable advantage, a consent judgment cannot be set aside or modified without the consent of the parties, nor is it subject to appeal.") (citations omitted). [*Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 565-566; 840 NW2d 375 (2013) (footnote omitted).]

An agreement to settle pending litigation constitutes a contract, and the rules governing construction and interpretation of a contract apply. *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015).

> "The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." Issues regarding the proper interpretation of a contract or the legal effect of a contractual clause are reviewed de novo. When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. If the language of the contract is clear and unambiguous, it must be enforced as written. A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation. Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided. [*McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012) (citations omitted).]

It is presumed the parties understand and intend the language employed in the settlement agreement. *Chestonia Twp v Star Twp*, 266 Mich App 423, 432; 702 NW2d 631 (2005) (citation omitted). Accordingly, the courts must enforce a contract as written when there is only one possible interpretation. *Id.*

Even a stipulated order that is accepted by the trial court must generally be construed in accordance with the rules of contract construction. *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). "Although the trial court is not necessarily constrained to accept the parties' stipulations or agreements verbatim, the trial court is entirely permitted to accept them and presume at face value that the parties actually meant what they signed." *Rettig v Rettig*, 322 Mich App 750, 755-756; 912 NW2d 877 (2018) (citation omitted).

> A stipulation is an agreement, admission, or concession made by the parties in a legal action with regard to a matter related to the case. The parties may enter into a stipulation to avoid delay, trouble, and expense. When the parties stipulate a set of facts, the stipulated facts are binding on the court, but stipulations of law are not binding. *Id.* [*People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007) (citation omitted).]

The bedrock of contract law is that "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). In fact, "[t]he notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable." *Id.* at 52. And, "one who executes a contract may protect himself from liability by a distinct agreement that it shall not become operative until there has been compliance with certain conditions thereof." *Kachanowski v Cohen*, 305 Mich 438, 441-442; 9 NW2d 667 (1943).

## VI. APPLICATION OF CONTRACT PRINCIPLES TO *SANDOVAL*

In *Sandoval*, the final order issued in the trial court was labeled an order for dismissal.[8] The final order was submitted with a stipulation of dismissal "with prejudice" and identified HFHS and Zurich as the dismissed parties.[9] The attorneys for the plaintiffs, Sandoval, HFHS, Zurich, and Boshevski all signed the stipulation to dismiss. Although Farmers was identified in the caption, there was a line through its name, and no attorney for Farmers signed the stipulation. In conjunction with this stipulation, an order was signed by the trial court, stating

> **UPON READING AND FILING** of the Stipulation attached hereto, and the Court being fully advised in the premises;

> **IT IS HEREBY ORDERED** that the above-captioned consolidated matters, Case Nos. 20-009792-NF and 20-014589-NF, be dismissed as to Henry Ford Health System and Zurich American Insurance Company, with prejudice and without costs to any party. This resolves the last pending claim and closes these consolidated cases.

It is evident from the case caption, the language of the stipulated order, the attorneys that signed the stipulation, and the language of the trial court's order that Farmers was not a participant in or party to the order of dismissal. The language of the stipulation was clear and unambiguous. *McCoig Materials, LLC*, 295 Mich App at 694. And, we must presume that the parties to this agreement understood and intended the language employed. *Chestonia Twp*, 266 Mich App at 432. Therefore, we must enforce this contractual stipulation to dismiss as written because there is only one possible interpretation. *Id*. Because Farmers was not a party to the stipulation and order for dismissal, i.e., a binding contract, we would not have imposed a requirement that Zurich expressly include a reservation of rights that the order of dismissal had no impact on its appeal of right to pursue the earlier decision granting Farmers' motion for summary disposition. There is no such requirement in contract law that the parties to a contract identify contingencies related to

---

[8] We recognize that a party's choice of label in a pleading is not dispositive because to do so would exalt form over substance. See *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011) (citation omitted). But because consent judgments and stipulated orders are both examined in accordance with contract principles, the label employed is not controlling.

[9] Boshevski was dismissed in a separate order.

nonparties, and at the time of entry of the order for dismissal, Farmers was no longer a party to or participant in the litigation. Further, there is no requirement in MCR 7.203(A), addressing our jurisdiction, that challenges to orders entered before a final order be preserved by reservation. We would not impose a condition that a reservation of rights or other "magical" language[10] controls our jurisdiction over a case, particularly where it is absent from our court rules and not found in the parties' contractual agreement. Consequently, we disagree with the *Sandoval* majority that the order of dismissal was required to include in its order of dismissal specific language reserving the right to appeal the summary disposition decision pertaining to Farmers. It is apparent from Farmers' lack of participation in the stipulation to dismiss and order of dismissal that Zurich remained an aggrieved party for purposes of MCR 7.203(A) and MCR 7.202(6)(i) pertaining to the earlier summary disposition order. Indeed, Farmers' appellate challenge[11] to the failure to include a reservation of rights in the order of dismissal allows a nonparty to an agreement to question the intent of the participating parties and to rewrite the agreement to require a term that

---

[10] For example, see *Faircloth v Family Independence Agency*, 232 Mich App 391, 400-401; 591 NW2d 314 (1998), and *McCarthy & Assoc, Inc v Washburn*, 194 Mich App 676, 680; 488 NW2d 785 (1992), where this Court cautioned that the language or identification of an order as "final" was not dispositive, and an examination of the order and parties should occur to determine appellate jurisdiction. ("Mere certification, however, does not resolve whether an order is actually 'final.' " *Faircloth*, 232 Mich App at 401 (citation omitted).)

[11] We note that there is the potential for parties to engage in gamesmanship arising from a requirement that a reservation of rights be placed in a final order closing a case. For example, in *Sandoval*, we could assume that the remaining parties had included a reservation of rights stating that the order for dismissal did not foreclose Zurich from appealing the order granting Farmers' dispositive motion. But, because Farmers was no longer a party to the litigation at that time and did not participate in the order for dismissal, Farmers could assert that the reservation of rights was not binding upon it in light of its exclusion from the negotiation, and this exclusion also served as a ground to prevent this Court from asserting jurisdiction over the appeal. The net result could potentially be that an aggrieved party would not use consent judgments or stipulated orders of dismissal, but give notice to all parties and seek the trial court's approval of the language of the final order to protect the right to appeal.

We also note that the *Sandoval* majority commented on Zurich's failure to pursue an interlocutory appeal. An interlocutory appeal is not "on par with an appeal from a final order" because it has "no constitutional pedigree." *People v Scott*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No.164790), slip op at 22. "[I]nterlocutory appeals are a precautionary procedure designed to correct a significant error in a specific case that may require reversal of the entire cause on final review if an interlocutory appeal is not taken." *Id.*, slip op at 27. "Interlocutory appeals are merely a procedural mechanism provided by our court rules to provide discretionary preliminary review of an alleged error and are not necessarily dispositive." *Id.*, slip op at 27-28. Because the grant of interlocutory relief is discretionary, we do not conclude that it has any bearing on our appellate jurisdiction to pursue an appeal of right.

the participating parties never included or intended and was not required by MCR 7.203(A). See *Chestonia Twp*, 266 Mich App at 432.

Similarly, in this case, we would apply these contract principles to conclude that plaintiff's appeal does not need to be dismissed for lack of jurisdiction by failing to include a reservation of rights addressing the underlying decision granting summary disposition in P & P's favor.

## VII. ANALYSIS OF MERITS OF SUMMARY DISPOSITION IN JABER

In this case, plaintiff contends that the trial court erred in determining that her negligence claims addressing the training and supervision of P & P's employees were barred by the exclusive remedy provision of the dramshop act. If we were not constrained to dismiss this case premised on the *Sandoval* majority opinion, we would agree.

"The general rule at common law was that a tavern owner was not liable for furnishing alcoholic beverages to a customer who became intoxicated and who, as a result of his own intoxication, either injured himself or an innocent third person." *Jackson v PKM Corp*, 430 Mich 262, 266; 422 NW2d 657 (1988) (footnote omitted). The dramshop act was created to address the void created by the common law's general rule of nonliability and was designed to be "a complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under 'dramshop related facts.' " *Id*. at 274-275 (quotation marks and citation omitted). The dramshop act[12] "provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor to a minor or intoxicated person." MCL 436.1801(9). But, the dramshop act "neither abrogates nor controls the common-law action" and therefore, a claim is not precluded if it "arises out of conduct other than selling, giving away, or furnishing of intoxicants. . . ." *Jackson*, 430 Mich at 276-277 (quotation marks and citation omitted).

To determine whether a claim is prohibited by the exclusive remedy provision of the dramshop act, requires a two-part analysis:

(1) Does the claim against "the tavern owner" arise out of an unlawful sale, giving away, or furnishing of intoxicants? If so, the dramshop act is the exclusive remedy.

(2) If the claim arises out of conduct other than selling, giving away, or furnishing of intoxicants, does the common law recognize a cause of action for the negligent conduct? If so, then the dramshop act neither abrogates nor controls the common

---

[12] "The dramshop act is part of the Michigan Liquor Control Act, MCL 436.1 *et seq*[.]" *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 611; 321 NW2d 668 (1982). The overall objective of the Liquor Control Act was to control alcoholic beverage traffic in the state. *Id*. The objective of the dramshop act "was to discourage bars from selling intoxicating beverages to minors or visibly intoxicated persons and to provide for recovery under certain circumstances by those injured as a result of the illegal sale of intoxicating liquor." *Id*. at 611-612.

law action. If not, there is no independent common-law claim. [*Id*. at 276-277 (citation omitted).]

A correlation between the common-law action and the furnishing of alcohol does not preclude a claim under the dramshop act. That is:

a claim is not precluded under the dramshop act merely because it *involves* the unlawful furnishing of alcohol. In determining whether a plaintiff has stated a valid, independent cause of action under the common law, a court must examine whether the situation is one in which there is a recognized duty at common law, that is, whether the actor was under any obligation to exercise reasonable care under the circumstances. . . . The distinction is that the *duty* breached, but not necessarily the claim's factual basis, must arise from something other than the unlawful furnishing of alcohol.

To determine whether a common-law claim has been validly pled, reference must be made to the common-law obligation which would expose the defendant to liability. If plaintiff has set forth a proper claim based on a duty under the common law, e.g., premises liability, negligent supervision or entrustment, inherently dangerous work activity, retention of incompetent contractor, failure to provide a safe place to work, then summary disposition is improper even though the factual basis of the claim involves the unlawful furnishing of alcohol. * * * Because the trial court did not address the viability of each of plaintiff's separate common-law claims, we remand for consideration of these claims in view of the appropriate legal standards and the facts of the case. [*Madejski v Kotmar Ltd*, 246 Mich App 441, 446-448; 633 NW2d 429 (2001) (quotation marks and citations omitted).]

In the present case, we would hold that plaintiff's negligence claims were not prohibited by the dramshop act's exclusive remedy provision. Plaintiff pleaded that her claims arose out of conduct other than the selling, giving away, or furnishing of intoxicants. *Jackson*, 430 Mich at 276-277. And, the common law recognizes a duty premised on negligent hiring, training, and supervision. See *Madejski*, 246 Mich App at 446-448. Accordingly, we would conclude that the trial court erred in determining that plaintiff's negligence claims[13] were barred by the exclusive remedy provision of the dramshop act.[14] *Id*.

---

[13] Plaintiff raised two claims of negligence. To the extent plaintiff alleged in count I that the failure to properly hire, train, and supervise its staff correlated to the service of "great quantities of intoxicating beverages" to Randall, plaintiff failed to present evidence regarding the service of intoxicating liquor to Randall. Therefore, plaintiff agreed to dismiss the dramshop claim. On remand, we presume that plaintiff will correct any allegations of negligence that cannot be associated with the service of alcohol to the failure to train.

[14] We note that P & P raised two issues not expressly addressed by the trial court. Specifically, P & P claimed that it could not be held responsible for a third-party's criminal acts. And, it asserted that plaintiff failed to demonstrate a breach of the standard of care. But, before plaintiff had an

Dismissed for lack of jurisdiction. If not bound by *Sandoval*, we would reverse in part and remand for proceedings consistent with this opinion. We therefore dismiss plaintiff's appeal for lack of jurisdiction only because we are bound to follow it, and MCR 7.215(J)(1) requires that we do so.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle

---

evidentiary burden to come forward with evidence addressing these points, P & P was required to make and support its challenges with documentary evidence. *Charter Twp of Pittsfield*, 338 Mich App at 449. P & P did not identify uncontradicted and specific criminal acts committed by Randall upon plaintiff when he was purportedly carried from and tossed by Dean from its establishment. And, P & P failed to present evidence addressing the appropriate standard of care such that plaintiff was not required to submit evidence to the contrary. *Id*.